UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMERY L. D.,

      Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

_____/

Case No. 2:24-cv-10713
District Judge Matthew F. Leitman
Magistrate Judge Anthony P. Patti

**<u>REPORT AND RECOMMENDATION TO GRANT IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (ECF No. 12), DENY IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 14),
and REMAND THIS MATTER FOR ACTION CONSISTENT WITH THIS
RECOMMENDATION</u>**

**I.     RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT IN PART** Plaintiff's motion for

summary judgment or remand (ECF No. 12), **DENY IN PART** Defendant's

motion for summary judgment (ECF No. 14), and **REMAND** this matter for action

consistent with this recommendation.

**II.     REPORT**

      Plaintiff, Emery L. D. (ELD), brings this action under 42 U.S.C. § 405(g)

and/or § 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") to review a final decision of the Commissioner.  (ECF

No. 1, PageID.2 ¶ 3.)  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 12), the Commissioner's cross motion for summary judgment (ECF No. 14), Plaintiff's reply (ECF No. 16), and the administrative record (ECF No. 6).

## A.   Background and Legal Framework

ELD filed an application for Child's Insurance Benefits (CIB) on June 2, 2021, alleging disability since January 4, 2021, when ELD was 19 years old.  (ECF No. 6, PageID.197-200.)[1]  Plaintiff's application was denied initially in September 2021 (*id*., PageID.81-89, 104-113),[2] and upon reconsideration in June 2022 (*id*., PageID.90-98, 115-124).

Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ").  (*Id*., PageID.125-126.)  ALJ David Mason held a hearing on March 21, 2023.  (*Id*., PageID.52-80.)  On April 20, 2023, ALJ Mason issued an opinion which found Plaintiff to not be disabled.  (*Id*., PageID.31-51.)  Claimants qualify to

---

[1] Plaintiff's prior applications seemingly were dated May 30, 2019 and December 13, 2019.  (ECF No. 6, PageID.287, 293.)

[2] It seems there are at least two types of Child's Insurance Benefits (CIB) under Title II – *i.e.*, CDB-R (Childhood Disability Beneficiary-Retired or Deceased [not re-entitlement]) and CDB-D (Childhood Disability Beneficiary-Disabled [not re-entitlement])," *see* https://secure.ssa.gov/POMS.nsf/lnx/0425501220.  The Field Office Disability Reports and the Disability Determination Explanations describe Plaintiff's claim as seeking CDB-R.  (*See*, *e.g.*, ECF No. 6, PageID.81, 90, 219, 246, 264.)

receive child's disability benefits if they are unmarried and under the age of 18.  If

they are older than 18, they qualify if they have a disability that began before they

turned 22.  20 C.F.R. § 404.350(a)(4)-(5).  Further, for "the period starting with the

day you attain age 18, we will use the disability rules we use for adults who file

new claims, in § 416.920." 20 C.F.R. § 416.924(f). Plaintiff was born September

28, 2001, filed the claim on April 20, 2021, and alleged an onset date (AOD) of

January 4, 2021.  (ECF No. 6-1, PageID.34, 36.)  Since Plaintiff was 19 years old

when the claim was filed, and claimed an onset date after the age of 18, the adult

disability rules apply.

At **Step 1** of the sequential evaluation process,[3] the ALJ found that Plaintiff

had not engaged in substantial gainful activity ("SGA") since January 4, 2021, the

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a
five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).
Although a dispositive finding at any step terminates the ALJ's review, *see Colvin
v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered the sequential
review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet
   or equal the criteria of an impairment set forth in the Commissioner's
   Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the
   claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and
   residual functional capacity, can the claimant perform other work
   available in the national economy?

AOD. (*Id*.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: anxiety disorder, depressive disorder, attention deficit hyperactivity disorder (ADHD), post-traumatic stress disorder (PTSD), and gender dysphoria. (*Id*., PageID.36-37.) At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (*Id*., PageID.37-39.) Between **Step 3** and **Step 4**, the ALJ found that Plaintiff had the residual functional capacity (RFC):

> . . . to perform a full range of work at all exertional levels [*i.e., no exertional limitations*], but with the following non-exertional limitations: he is limited to simple, routine, and repetitive tasks, but not at a production rate pace such as assembly line work, and involving only simple work-related decisions with few, if any, workplace changes [*i.e., sustained concentration and persistence* and, perhaps, *understanding and memory* and/or *adaption limitations*]; he can have only brief and superficial interactions with co-workers or supervisors; and he can have no interaction with the public [*i.e., social interaction limitations*].

(*Id*., PageID.39-44.) At **Step 4**, the ALJ found that Plaintiff had no past relevant work. (*Id*., PageID.44.) At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that he could perform. (*Id*., PageID.44-45.) Accordingly, the ALJ determined that Plaintiff had not been under

---

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

a disability, as defined in the Social Security Act, from January 4, 2021 through the date of the decision.  (*Id*., PageID.46.)

Plaintiff sought review of the hearing decision.  (*Id*., PageID.192-193.)  On January 25, 2024, the Appeals Council denied the request for review.  (*Id*., PageID.17-23.)  Thus, ALJ Mason's decision became the Commissioner's final decision.  Plaintiff timely filed this lawsuit on March 20, 2024.

## B.    Standard of Review

The parties agree as to the standard of review.  The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding

whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant

6

on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d

at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### C.    Analysis

Plaintiff suffers from gender dysphoria and identifies as a male. (ECF No.

6-1, PageID.36, 621, 623.) Plaintiff reported being "sexually, verbally, and

mentally abused" by their biological father at the age of 12, leading to the father's

arrest for molestation of both Plaintiff and Plaintiff's sister, which eventually

resulted in a 14-to-40-year sentence. (*Id.*, PageID.621-622.) Plaintiff began

transitioning socially at 17 years of age (*id.*, PageID.633, 657, 664), reported

taking medication for PTSD and bipolar disorder in August 2019 (*id.*,

PageID.787), and, as early as May 2020, sought to undergo a "mastectomy and

chest reconstruction" to help reduce "gender dysphoria, and possibly to begin work

with a therapist on other concerns[,]" (*id.*, PageID.679). Plaintiff underwent

bilateral mastectomies on October 22, 2021 and a hysterectomy on January 3,

2022. (*Id.*, PageID.691-694, 708-712.)

Plaintiff's suffering is undeniably tragic. Nonetheless, in this appeal, the

Court's role is limited to reviewing Plaintiff's two statements of error, each of

which challenges the ALJ's RFC determination. (ECF No. 12, PageID.927, 930-

947.) The Commissioner opposes Plaintiff's motion, arguing that substantial

evidence supports the ALJ's decision.  (ECF No. 14, PageID.950, 954-976.)

Plaintiff's statements of error will be addressed in reverse order.

### 1. Whether the ALJ improperly evaluated the opinion of Plaintiff's treating therapist, Nicholas Zielke, L.M.S.W.?

#### a. Zielke's opinions

The record contains three pieces of evidence from Nicholas Zielke, a

licensed social worker, including:  (1) a February 18, 2022 letter concerning

Plaintiff's claim for social security benefits (ECF No. 6, PageID.716-717); (2) a

form Zielke completed on January 31, 2023, which contains diagnostic questions,

functional questions, and questions about the effects of work-related stressors

(ECF No. 6, PageID.887-890); and, (3) a March 14, 2023 letter regarding

Plaintiff's mental health disability application, which lists the dates on which ELD

attended therapy (ECF No. 6, PageID.914).

Plaintiff's appeal focuses on the ALJ's treatment of Zielke's January 31,

2023 opinion.  (ECF No. 12, PageID.942-943.)

#### b. Other opinion evidence

Before addressing the evidence at the center of Plaintiff's opinion evidence

challenge, it is helpful to note the ALJ's consideration of other opinion evidence.

The ALJ found:  (i) "somewhat persuasive" the December 2019 opinion of

consultative examiner Rosalynn Moten (ECF No. 6, PageID.462-664); and, (ii)

"somewhat persuasive" the September 2021 opinion of consultative examiner

8

Atara Abramsky, Ph.D. (*id*., PageID.621-627).  (ECF No. 6, PageID.42-43.)  In

addressing Dr. Moten's opinion, the ALJ noted that "more recent consultative

psychological examinations" indicate "some moderate mental functioning

limitations . . . ."  (*Id*., PageID.42 (citing Ex. 8F [Dr. Abramsky's opinion] & Ex.

14F [a May 24, 2022 consultative examination report] (*id*., PageID.729-732).)

The ALJ also considered the state agency psychological consultants'

opinions, expressly finding:  (i) "somewhat persuasive" the September 2021

opinion of state agency psychological consultant Kathy Morrow, Ph.D. (*see id*.,

PageID.84-88), who had concluded that Plaintiff "retains the ability to perform

simple, routine tasks on a sustained basis[,]" (*id*., PageID.88); and, (ii) "mostly

persuasive" the June 2022 opinion of state agency psychological consultant

Edward Czarnecki, Ph.D. (*see id*., PageID.92-97), who had concluded that Plaintiff

"retains the mental capacity for simple, routine, repetitive tasks with brief,

occasional and superficial social interaction in a low stress work environment with

only simple decision making and infrequent simple changes in routine[,]" (*id*.,

PageID.96).  (ECF No. 6, PageID.43.)  In addressing these opinions, the ALJ

referenced "updated" records – seemingly the January 2022 student

accommodation memo (*id*., PageID.885), the January 2022 office visit notes (*id*.,

PageID.900-905), and/or the November 2022 office visit notes (*id*., PageID.906-

913) – and Plaintiff's testimony as bases for *further restrictions* to "simple,

9

routine, and repetitive tasks with simple work-related decisions that do not involve a production rate pace, any interaction with the public, more than brief and superficial interactions with co-workers or supervisors, or more than few, if any, workplace changes . . . ."  (*Id*., PageID.43.)[4]

### c.    Zielke's January 31, 2023 letter

Returning to the focus of Plaintiff's argument on appeal, the ALJ set forth an extensive review of Zielke's January 31, 2023 form (*see* ECF No. 6, PageID.43-44), and, to the extent Zielke acknowledged that Plaintiff has required a "grace period" or "flexibility on punctuality and completing tasks[,]" (ECF No. 6, PageID.890), the ALJ stated:

> . . . the undersigned acknowledges that Section 504 accommodations have been provided for his college computer programming classes that include extended time for assessments and taking breaks during class, but he did not require special education services in completing a virtual learning program to graduate from high school and *there is no subsequent documentation of significant mental deterioration beyond a moderate level* that indicates he would be unable to perform *simple, routine, and repetitive tasks with simple work-related decisions that do not involve a production rate pace, any interaction with the public, more than brief and superficial interactions with co-workers or supervisors, or more than few, if any, workplace changes* on a

---

[4] The ALJ cited eight exhibits.  *See* ECF No. 6, PageID.43 (*citing id*., PageID.248-255 [Function Report], PageID.577-618 [Beaumont Medical Center office treatment records], PageID.619-627 [opinion of consultative examiner Atara Abramsky, Ph.D.], PageID.673-712 [Michigan Medicine office treatment records], PageID.728-732 [opinion of consultative examiner(s) Jeter / Bray, Ph.D.], PageID.733-817 [Beaumont Medical Center office treatment records], PageID.885 [education records from Disability Support Services Office], and PageID.891-913 [Trinity Health Outpatient Psych and Counseling office treatment records]).

sustained basis (2A, 3A, 3E, 7E, 7F, 10F, 14F, 15F, 17F, 19F, 20F, and 21F).  The aforementioned evidence also does not corroborate the ongoing presence of all the symptoms and signs identified by Mr. Zielke (7F, 10F, 14F, 15F, 19F, and 20F).

(ECF No. 6, PageID.44 (emphases added).)  These citations, excluding the disability determinations and the function reports, comprise approximately <u>200 pages of medical records</u>.  The ALJ then concluded that Zielke's opinion "is mostly unpersuasive because it is not generally consistent with or supported by the overall evidence of record."  (*Id*., PageID.44.)

### d.    Supportability & consistency

Indeed, "[t]he factors of supportability . . . and consistency . . . are the most important factors [the SSA considers when determining] how persuasive [it finds] a medical source's medical opinions or prior administrative medical findings to be."  20 C.F.R. § 404.1520c(b)(2).  *See also id*., §§ 404.1520c(c)(1), (c)(2).

For the moment, the Court sets aside the issue of whether Plaintiff's college work is "pertinent" or "relevant" (*see* ECF No. 12, PageID.943-944; ECF No. 14, PageID.968-967) and focuses on Plaintiff's dispute of the ALJ's statement that "[t]he aforementioned evidence also does not corroborate the *ongoing* presence of all the symptoms and signs identified by Mr. Zielke (7F, 10F, 14F, 15F, 19F, and 20F)."  (ECF No. 6, PageID.44 (emphasis added).)  (ECF No. 12, PageID.944.)  The Court pauses to note that the six exhibits are comprised of *nearly 200 pages*.

Plaintiff contends the records show that Plaintiff's "depressive and anxiety" and "gender dysphoria" symptoms "waxed and waned throughout the relevant period, consistent with Mr. Zielke's 2023 opinion." (ECF No. 12, PageID.944.) Plaintiff contends that Zielke's opinions on the presence of certain symptoms and marked limitations in certain of the functional areas (ECF No. 6, PageID.887-889) are consistent with:

- Notes from St. Joe's Primary Care dated April 21, 2021, when the psychiatric / behavioral examination was "positive for decreased concentration and dysphoric mood[,]" and Plaintiff was "nervous / anxious[,]" (*id*., PageID.633), and the diagnoses included gender dysphoria, as well as anxiety and depression (*id*., PageID.636);

- Notes from a July 30, 2021 outpatient psychiatric evaluation at Trinity Health, when Plaintiff presented for "for treatment of depression and anxiety in the context of significant psychosocial stressors" including loss of Plaintiff's mother two years earlier, and "interpersonal conflict within the home[,]" (*id*., PageID.892);

- Notes from St. Joe's Primary Care dated October 11, 2021, when the psychiatric / behavioral examination was "positive for decreased concentration, dysphoric mood and sleep disturbance[,]" and Plaintiff was "nervous / anxious[,]" (*id*., PageID.664);

- Notes from Trinity Health dated January 17, 2022, when the mental status exam for "affect" was "mood congruent, with constricted facial and emotional expressions[,]" (*id*., PageID.901-902); and,

- Notes from a November 1, 2022 psychiatric evaluation at Trinity Health (*id*., PageID.908-912), where the provider's

12

assessment notes, "[o]n evaluation, patient presented with constricted affect endorsing depressive symptoms in the context of not being on medications due to insurance[,]" (*id.*, PageID.911), and Plaintiff was started on Cymbalta "for depression and anxiety[,]" (*id.*, PageID.912).

(ECF No. 12, PageID.944-946.)[5]

The Commissioner notes the ALJ's reliance upon six exhibits and contends these records "demonstrate that the ALJ's conclusion is supported by substantial evidence[,]" and "supported his conclusion that Mr. Zielke's opinion was not consistent with the evidence in the record[,]" providing a page-cited review of evidence dated June 2020 to November 2022. (ECF No. 14, PageID.969-973.) And, as for Plaintiff's page-cited references to the aforementioned records dated April 2021 to November 2022 (*see* ECF No. 12, PageID.944-946), the Commissioner contends Plaintiff "fails to show any error in the ALJ's analysis . . . ." (ECF No. 14, PageID.973-975.)

To be sure, as for Plaintiff's diagnoses of gender dysphoria, anxiety, and depression, "disability is determined by the functional limitations imposed by a

---

[5] To the extent Plaintiff's opinion evidence argument relies upon *reported* symptoms at a July 30, 2021 outpatient psychiatric evaluation (*id.*, PageID.892) or in January 17, 2022 progress notes (*id.*, PageID.901-902) (*see*, *e.g.*, ECF No. 12, PageID.945-946), Plaintiff has not put forth a developed challenge to the ALJ's compliance with 20 C.F.R. § 404.1529 ("How we evaluate symptoms, including pain.") or SSR 16-3p ("Evaluation of Symptoms in Disability Claims"), even if the ALJ's "subjective symptom description" and SSR 16-3p are mentioned within the conclusion (*see* ECF No. 12, PageID.947).

13

condition, not the mere diagnosis of it." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014).  And, as for the Cymbalta prescription, "taking medication for anxiety and depression is not necessarily, in and of itself, strong evidence of having a disability, let alone conclusive evidence.  It is not uncommon to take such medications in this country, and countless numbers of duly employed workers and students are on them." *Colbert v. Comm'r of Soc. Sec.*, No. 2:15-CV-13467, 2017 WL 1214187, at *6 (E.D. Mich. Feb. 10, 2017) (Patti, M.J.) (internal citation omitted), *report and recommendation adopted*, No. 15-13467, 2017 WL 1018149 (E.D. Mich. Mar. 16, 2017) (Edmunds, J.).

Nonetheless, there is merit to Plaintiff's argument that the ALJ "did not provide the requisite articulation for rejecting Mr. Zielke's opinion, as required by 20 C.F.R. § 404.1520c."  (ECF No. 12, PageID.946.)  This regulation dictates how the SSA will "consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017."  20 C.F.R. § 404.1520c.  With express reference to the ALJ's reliance on six exhibits – comprised of nearly 200 pages – as not corroborating the ongoing presence of symptoms and signs by Zielke (*see* ECF No. 6, PageID.44), Plaintiff rightfully points out that this "broad reference to the record" does not permit this Court "on review to determine specifically what evidence in the record undermines or is inconsistent with Mr. Zielke's opinion."  (*Id*., PageID.946.)  *See, e.g., Stevens v.*

14

*Comm'r of Soc. Sec.*, No. 1:24-CV-220, 2024 WL 4528023, at *1 (W.D. Mich. Oct. 18, 2024) ("if an ALJ does not provide at least a basic articulation of how the conclusion connects to 335 pages of records, a reviewing court cannot meaningfully evaluate the pathway of the ALJ's reasoning and whether substantial evidence supports it.").  These records, as shown by Plaintiff, contain a significant amount information that is *consistent* with Zielke's opinion.  Since the Court cannot tell from the ALJ's broad, six-exhibit, composite reference to medical records what he considers to be *inconsistent* with Ziekle's opinion, Plaintiff (let alone the Court) can hardly be expected to "'to trace the path of [the ALJ's] reasoning.'"  *Stacey v. Comm'r of Soc. Sec.*, 451 Fed. Appx. 517, 519 (2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).  Considering that consistency and supportability are the "most important factors" the SSA considers when it evaluates "the persuasiveness of medical opinions and prior administrative medical findings[,]" 20 C.F.R. §§ 404.1520c(a) & (b)(2), the ALJ in this particular case has not fulfilled the requirement to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [Plaintiff's] determination or decision." 20 C.F.R. § 404.1520c(2).

In fact, the ALJ routinely provides string-cites to entire exhibits of medical records (*see* ECF No. 6, PageID.41-44), although he at least provides dates from

2019 to November 2022 for such records within his review of the non-opinion evidence (*id.*, PageID.41-42).  By comparison, the six-exhibit string-cite (comprised of nearly 200 pages) used to discount the consistency and/or supportability of Zielke's January 31, 2023 opinion as to Plaintiff's symptoms and signs is not accompanied by indicia to discern to which of the plentiful pages the ALJ refers.  (*See id.*, PageID.44.)  This is particularly significant where, as here, it appears that this Zielke opinion was first expressly cited within the ALJ's review of the opinion evidence itself (*see id.*, PageID.43-44), *i.e.*, the Court cannot look to a prior mention of this exhibit for clarification.  Thus, to the extent the Commissioner contends "the ALJ specifically identified the evidence that was inconsistent with [Zielke's] opinion[,]" (ECF No. 14, PageID.975 (citing ECF No. 6, PageID.44)) and then tries to discuss the string cited refences to the evidence with much greater specificity than the ALJ did, the Undersigned rejects this approach as *post hoc* rationalization.  The Commissioner cannot read the ALJ's mind any better than the Court can.  "Fundamentally, it is the responsibility of the ALJ, not the Court nor the Commissioner, to evaluate the relevant evidence in the first instance; the fact that the Commissioner now offers *post hoc* justifications for the ALJ's conclusion is simply insufficient." *Mendyk v. Comm'r of SSA*, No. 18-11730, 2019 U.S. Dist. LEXIS 145423, at *19 (E.D. Mich. Aug. 7, 2019) (Patti, M.J.), report and recommendation adopted, 2019 U.S. Dist. LEXIS 144953 (Aug.

16

27, 2019) (Cleland, J.). *See also, Schroeder v. Comm'r of Soc. Sec.*, No. 11-14778, 2013 WL 1316748, at *13 (E.D. Mich. Mar. 1, 2013) (Commissioner's "post hoc rationalization" is not an acceptable substitute for the ALJ's failure to adequately evaluate the medical evidence). Based on these same all-encompassing citations, Plaintiff can hardly be expected to know why Zielke's opinion was deemed inconsistent. Accordingly, Plaintiff is entitled to remand on the statement of error regarding opinion evidence.

> **2.     Whether the ALJ overemphasized Plaintiff's college work and failed to duly consider medical evidence of ongoing symptoms of Plaintiff's depression, anxiety and gender dysphoria?**

At Step 2, the ALJ determined that Plaintiff's severe impairments include, *inter alia*, anxiety disorder, depressive disorder and gender dysphoria. (ECF No. 6, PageID.36-37.) At Step 3, the ALJ mentioned college coursework within his determinations that Plaintiff had "moderate limitation" in the functional areas. (ECF No. 6, PageID.38-39.) Then, in the RFC assessment, the ALJ mentioned Plaintiff's college coursework, depression, anxiety or gender dysphoria on several occasions. (ECF No. 6, PageID.40-42.)

In this appeal, Plaintiff contends that the ALJ "*overemphasized* Plaintiff's college work" and "failed to *duly* consider medical evidence of ongoing symptoms of Plaintiff's depression, anxiety and gender dysphoria." (ECF No. 12, PageID.927, 930-947 (emphases added).) Elsewhere, Plaintiff takes issue with the

ALJ's "*heavy* reliance on Plaintiff's academic work" and argues that "Plaintiff's

college work," with its "accommodations and struggles" and other cited evidence

"reflects an inability to sustain such activities[,]" *i.e.*, "usual work situations, and to

deal with changes in a work setting[.]" (*Id.*, PageID.935, 942 (italics added).) As

Defendant points out, all of this smacks of a request for the Court to merely

reweigh the evidence and come out the other way. (ECF No. 14, PageID.961; ECF

No. 16, PageID.980-981.) This the Court cannot do. *See Mullins v. Sec'y of Health*

*& Hum. Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) ("Our task is not to reweigh the

evidence."). The Court may not take up Plaintiff's suggestion to second-guess the

ALJ by making *relative* or *subjective* determinations as to whether *enough*

consideration was given, or as to whether reliance on academic work was *too*

*heavy* or whether other cited evidence in fact "reflects an inability to sustain such

activities" without reweighing the evidence. And this is the case "'even if there is

substantial evidence in the record that would have supported an opposite

conclusion.'" *Blakely*, 581 F.3d at 406 (quoting *Key*, 109 F.3d at 273).

Moreover, the Court notes other potential vulnerabilities in this statement of

error. First, Plaintiff's "consistency" paragraph took into consideration more than

just Plaintiff's college coursework before concluding that Plaintiff's "medically

determinable impairments can be adequately accommodated by limiting him to

*simple, routine, and repetitive tasks with simple work-related decisions that do not*

involve a production rate pace, any interaction with the public, more than brief
and superficial interactions with coworkers or supervisors, or more than few, if
any, workplace changes." (*Id*., PageID.42 (emphasis added).) Second, the parties'
debate the propriety of considering education. (ECF No. 12, PageID.938-939;
ECF No. 14, PageID.956, 962; ECF No. 16, PageID.984.) *See Cohen v. Sec'y of
Dep't of Health & Hum. Servs.*, 964 F.2d 524, 531 (6th Cir. 1992), *Parish v.
Califano*, 642 F.2d 188, 191-192 (6th Cir. 1981), *Reaves v. Shalala*, No. 93-6027,
1994 WL 389191, *4 (6th Cir. July 26, 1994). Third, to the extent Plaintiff cites
hearing testimony (*see*, *e.g.*, ECF No. 12, PageID.940-941), Plaintiff has not put
forth a developed challenge to the ALJ's compliance with 20 C.F.R. § 404.1529
("How we evaluate symptoms, including pain.") or SSR 16-3p ("Evaluation of
Symptoms in Disability Claims"), even if the ALJ's "subjective symptom
description" and SSR 16-3p are mentioned within the conclusion (*see* ECF No. 12,
PageID.947).

   Nonetheless, because the Undersigned has already recommended remand on
Plaintiff's opinion evidence statement of error, this report need not address
whether the ALJ's RFC assessment complies with SSR 96-8p ("Assessing [RFC]
in Initial Claims") and/or SSR 85-15 ("Capability To Do Other Work — The
Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional
Impairments") in any greater detail. (ECF No. 12, PageID.941-942.)

19

**D.     Conclusion**

For the reasons stated above, it is **RECOMMENDED** that the Court

**GRANT IN PART** Plaintiff's motion for summary judgment (ECF No. 12),

**DENY IN PART** Defendant's motion for summary judgment (ECF No. 14), and

**REMAND** this matter for action consistent with this recommendation.

**III.    PROCEDURE ON OBJECTIONS**

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d

390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d

1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections

must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated:  March 14, 2025

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE